So case 0870885 and 0873010 and 0971268 are presently before the court. We will suggest for the record that there was last night filed a motion to continue oral argument. Frankly, based on the motion to continue the oral argument, we didn't find that there were adequate facts to suggest to us that this was a situation which the rule would say we ought to grant the motion because what was in the motion was just not or were not just alleged facts which were necessary to grant the motion. We say for the record, you know, we're pretty easy on At that point, it has to do with people having legitimate conflicts and doing what they need to do. After the panel is known, it's got to be pretty extraordinary circumstances in order for us to grant the motion. And the best we know from her affidavit is that she has a death in the family. That's the best we or that she did contact and notify you by a voicemail. We don't know what happened on that, but it seems to us that that's just not enough to pass the standard. And that's discretionary standard. And we make the decision to deny the motion. We're going to continue with this hearing. It's going to be a little bit difficult in that we do have questions for you, which we're ready and But we'll also hear whatever you've got to say about the motion. They have in the interest of time, so I'm prepared to respond to your questions, Your Honor. Okay. You didn't want to make argument, any argument or you just wanted? Well, we would urge the court to dismiss the case with respect to asylum because the court lacks jurisdiction over that determination because the petitioner failed to meet the one year application deadline with respect to asylum. The issue of timeliness on However, you would admit, you would agree with me that even though that might be true, given the motion regarding ineffective assistance of counsel, that could come back up again if we were to look at that, right? It could possibly come back up in terms of answering the ineffective assistance of counsel question, but the ineffective assistance of counsel question and timeliness is caught up in what sort of documentation could have been proven up to demonstrate that he applied in a timely fashion. And the document that I think he keeps pointing to is this Mexican visa that all it points to is he was at some point in Mexico at some particular time. It doesn't demonstrate that he was in the United States or made an entry into the United States sufficiently that he filed his asylum application in a timely fashion. Well, I guess my worry about all of this is that this case comes down after a pretty heavy-duty case out of our court that I wasn't the one who was involved in putting it out there, but that's the Wren case. Yes, sir. The Wren case says it's not enough to have somebody come to a hearing and when you're at the hearing, ask you the questions, and then because you didn't bring the documentation, that you're already out. In fact, Wren would suggest just the opposite, that if you get to the hearing and you have a problem with the inconsistencies, that you've got to give them some time to go out and find the corroborative information. You just can't throw them out because they didn't bring it to the hearing, especially when their counsel says, we're not going to present it and don't bring it, you don't need it. That's the big issue, I think, in this case. And I think at the point that he was certainly notified about corroboration when he was being cross-examined by the Department of Homeland Security attorney, and then he's notified about corroboration. Well, just a minute. What notification is there in this record that this petitioner had that he was going to have to bring corroborative material to any hearing he had? Certainly none before the hearing. At the hearing, he's let known by the... So Wren would say, you just can't tell them at the hearing they've got to have corroboration. You've got to give them some time to go out and find it. I think Wren is currently before the court en banc with the, I believe it's the Ashodi case. I think the court is looking at what particular factors and what sort of notification is required. So you're saying hold this until we get that? I would suggest that without what the court should do with respect to only the corroboration point in this case, Your Honor. But I would make the further point, noting that the corroboration point is en banc before this Court, that certainly after the immigration judge issues the decision, he's aware that the corroboration is needed, and then he comes forward with a new attorney with documentation, and the board says, well, that documentation still doesn't prove up your case with respect to assignment time limits. But it's what he alleged about that corroboration, about what the attorney told him about what he was supposed to bring then. I mean, if his attorney tells him don't worry about it and don't bring it in here, counsel told him not to turn, not to turn in his counterfeit Russian passport or his Armenian passport, which would have indicated the date of arrival. Counsel told him that he wouldn't need corroborating evidence. Counsel told him, hey, we don't need to worry about the application and the review. I mean, if that's what really happened, we're still at the same point. Well, the board dealt with that allegation when it denied the motion to reopen. It said, look, even if you did offer that Russian passport, all that approved or brought in was that Mexican visa, which was actually presented to the immigration judge, and all it showed in that Mexican visa was he was in Mexico at a particular date. It didn't show when he had crossed the border or when he had entered the country. Counsel told him, don't bring this Russian passport into the court. But the Mexican visa, which was in the Russian passport, actually made it to the court. The immigration judge said, I can't make heads or tails of it. I'm not going to admit it. But the document was actually there before the immigration judge, and then it's brought again later with respect to this motion to reopen. But all of that evidence just points to he was in Russia or he was in Mexico or he was in Brazil at a particular point. It doesn't add up to the fact that he was in the United States or crossed the border of the United States within a year sufficient to comply with the one-year deadline with respect to his asylum application. Well, my worry is, in reading what the BIA said, and really I think the IJ as well, that they were big on this new corroboration stuff, that they really weren't focusing on the kind of things that they really needed to understand about, well, that they understood. But since they had corroboration as a good out, they really focused on corroboration. In fact, I've not found an opinion so good on corroboration as this, except that I got one next time that's kind of built on the same kind of idea. Because if I read the opinion and I look at the inconsistencies that they really looked at, I didn't find that the petitioner was confronted about the Gregorian beating in the hearing, or in the decisions made. I didn't find that the petitioner was confronted about the passport, or about the cogent finding about why that's important. And I didn't find any confrontation about when he stopped working at the factory. And therefore, saying what they said is absolutely wrong because of this, and this, and this. Which, if I look at these things, and I'd prepare an outline for an IJ, if I were in your shoes, I could probably help you prepare one, that I look, was there an inconsistency? Were they confronted? Did they make an explanation of why it was important? And I didn't find those. And I understand, based on what you've already submitted, that you are really saying, don't work too hard on the mayor race. It's not too big a deal. And so here we are. And I think there were four inconsistencies found by the immigration judge, and I think the board reduces that to three. And I think through our brief in my 28J letter, we're really down to two. I think the Russian passport and the factory issue. I think the critical one, from our perspective, is the Russian passport. And he is confronted about it in his testimony. He's asked whether the declaration is correct. And he says, no, I didn't obtain the Russian passport and fled to Russia. In Russia, I found it and I obtained the Russian passport. Is that in the record? That's at page 754. I understand that it's in the record as to what was said and what wasn't said. But is that something the IJ commented on in its decision? I believe the IJ does comment on it. Because when I read what the IJ and the BIA said, it seems to me that the IJ just lists all of the inconsistencies but says nothing else about it, because they're jumping right to confrontation. That's why I told you it seems like they're getting big on confrontation in this particular decision. And I think what happens, looking at the immigration judge's decision, it's in which it became effective on May 11, 2005. So I think the confrontation with respect to the passport, there is an exchange between the petitioner and the government's counsel with respect to, you know, what is it with respect to this Russian passport? His asylum statement says one thing and his testimony is quite the other. He attempts to explain the situation with the Russian passport. And the immigration judge doesn't accept it here. Well, I didn't see any place in there where the immigration judge says, I didn't accept it, and this is the reason, and therefore I'm not going there. He lists it as an inconsistency, but that's the best I could find. I have at the immigration judge's decision, I think it's in which the immigration judge's decision, and therefore I'm not going there. Well, I don't intend to use all your time on that. I just wanted to lay out for you the problems that I found in what the immigration judge and the BIA did. And my notes suggest he admitted his declaration was incorrect regarding use of the Russian passport to leave Armenia and to go to Russia versus he obtained the passport in Russia. And I have that at 703 and 704 of the record. I think that's the immigration judge's decision. So, but to be clear and to be sure, the immigration judge relies on both credibility and cooperation, and the credibility has to do with the inconsistencies. The cooperation, there's certainly the issue with respect to timing and when he was notified that he had to come to court with certain documentation. But I think that question is before the court en banc in the Ashodi case in terms of what is. Is there a particular timing that is necessary with respect to cooperation? Does it have to be set out before the immigration hearing takes place? Certainly, aliens are on notice through the Real ID Act. That's the law that they have. Otherwise, credible testimony may have to be corroborated. So there are notice through the law, but I think what is en banc before the court is whether what is the actual timing that's necessary with respect to cooperation. One other question that I have is it seemed to me that when we're dealing with the competence or the ineffectiveness of counsel, that the BIA used a standard which is would have prevailed if negligent misrepresentation had occurred. The standard is must only show that he has a plausible ground for relief. That's out of Lynn versus Ashcroft. Isn't that a good reason for us to send that back and say, hey, apply the right standard and tell us what you're saying again? No, I don't believe so. I mean, would he have prevailed if negligent representation had occurred is a more ‑‑ in my book, a more stringent standard than must only show that he has a plausible ground. I think the plausible ground language goes to is there are plausible grounds for relief. I think that takes out of ‑‑ is taken out of consideration. Well, I understand it's plausible ground for relief, but that's a lot less stringent standard than would he have prevailed. And I think at the time the board ‑‑ and I think what we're talking about is when the board cites the matter of Compian case saying, but for, you wouldn't have demonstrated that you were credible. So the plausible ground for relief assumes, I believe, that you are credible, and we can just get to this question. If we accept your facts as true, whether there's plausible grounds for relief in your case. But when there's a credibility question, I think what the board said was, and matter of Compian was good law at the time the board cited it. It had been subsequently vacated by the attorney general. But the time that the board cited matter of Compian, it was good law, and it was dealing with the question of, well, but for this allegation, would it have proven that you were in fact credible? And so we have a credibility determination versus a plausible ground for relief situation here. And so Compian, I think, was appropriately cited with respect to, well, even if we accept what you said is true here, but for that, would you be credible? And the board said, we don't take your evidence as credible, and all that your documentation shows is you were outside of the United States at particular dates, and that doesn't add up to you filing a timely asylum application. So I understand the court's point that on plausible ground for relief, that's assuming that you're credible going forward with respect to that ground for relief, not with respect to the question of, are you a credible individual? So that's why they used the matter of Compian case, which was good law at the time that the board cited it. In your view, we should do what? In our view, you should dismiss the asylum petition for review with respect to the timeliness for lack of jurisdiction. And with respect to the remainders of the cases, you should the board did not abuse its discretion with respect to denial of the motion to reconsider, denial of the motion to reopen, and substantial evidence supports the credibility and corroboration determinations with respect to withholding and the torture convention claims, Your Honor. I thank you very much for coming clear out here. Appreciate you coming and appreciate your argument. Thank you, Your Honor. We've been able to ask you the questions we wanted to ask. And it wasn't complete waste. I was here yesterday for an argument. Oh, you agree that the weather in San Francisco has caused you no hardship. And I'm in Sacramento, Oregon, so I was here yesterday for an argument. So it wasn't a complete waste of time. Thank you, Your Honor. Okay. Thank you very much. This, the case of, cases 077088508, 73010, 0971268, Hagopian v. Holder are now submitted. Thank you very much. And I guess court is in recess.
judges: Burgess, Farris, Smith